UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| **TERRY DEARING,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:05CV337MLM |
| ) | |
| **JOHN E. POTTER,** ) | |
| **POSTMASTER GENERAL, and** ) | |
| **NATIONAL ASSOCIATION OF LETTER** ) | |
| **CARRIERS OF THE AFL-CIO 343,** ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

This matter is before the court pursuant to the Motion to Dismiss or, in the alternative, Motion for Summary Judgment filed by Defendant John E. Potter. Doc. 9. Plaintiff Terry Dearing filed a Response. Doc. 15. Defendant filed a Reply. Doc. 16. Plaintiff filed a Surreply. Doc. 18. Also before the court is a Motion to Dismiss filed by Defendant National Association of Letter Carriers of the AFL-CIO, Local 343, ("NALC"). Doc. 20. Plaintiff filed a Response. Doc. 24. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Doc. 23.

### UNDISPUTED FACTS[1]

---

[1] Local Rule 4.01(E) of the Eastern District of Missouri requires that, upon responding to a defendant's Uncontroverted Statement of Facts pursuant to a Motion for Summary Judgment, a plaintiff must set forth a statement of "material facts as to which the party contends a genuine issue exists." To do so a plaintiff "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). For each fact which a defendant claims is uncontroverted and which a plaintiff claims is controverted, the plaintiff must "set forth with specific references to portions of the record, where available, upon which the opposing party relies" and note the paragraph number from the defendant's Statement of Uncontroverted Facts which is in dispute. Local Rule 4.01(E). Unless facts set forth in a defendant's Statement of

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

1.      In 2001 Plaintiff was employed by the United States Postal Service ("Postal Service") as a letter carrier.

2.      As a letter carrier, Plaintiff was a member of the NALC which is the exclusive bargaining representative of employees of the Postal Service in the unit set forth in the collective bargaining agreement (the "Agreement") between the NALC and the Postal Service.

3.      On December 28, 2001, the Postal Service issued a Notice of Removal to Plaintiff.[2]

4.      Pursuant to the grievance procedure as set forth in the Agreement, the NALC filed a grievance with respect to Plaintiff's removal, which grievance was arbitrated. On October 30, 2002,

---

Uncontroverted Facts are specifically controverted as set forth above, the uncontroverted facts as set forth by the defendant are deemed admitted. See id.

In support of his Motion to Dismiss, or in the alternative, Motion for Summary Judgment, Defendant Potter has filed a Statement of Material Facts in compliance with Rule 4.01(E). The court notes that Plaintiff has not responded to this Statement of Material Facts as required by Rule 4.01(E). As the court finds below that Defendant's Motion to Dismiss should be granted and as it need not address Defendant's arguments in terms of a motion for summary judgment, the court will address the allegations of the complaint most favorably to Plaintiff and take all well-pleaded allegations as true to determine whether the plaintiff is entitled to relief. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

[2]     According to the decision of the arbitrator, Plaintiff testified that in 1999 he began hearing voices and that "the voices distracted him so relentlessly that finally on November 2, 2000, his day off, [Plaintiff] drove two hundred miles to Kansas City, Missouri to report the presence of the voices to the Federal Communications Commission." Def. Ex. F. at 2-3. Plaintiff told a Postal Inspector, among other things, that "the voices urged him to 'fix problems at the Normandy branch by harming himself or others he works with'" and that the method used by the voices "'was used to coerce Postal employees in previous acts of violence to do just that.'" Id. at 3. The arbitrator further stated that the Postal Service subsequently placed Plaintiff on Emergency Suspension-Off Duty Status, without pay based on "supervisors' conclusions that he posed a direct threat to the workplace"; that pursuant to a grievance Plaintiff's Emergency Suspension-Off Duty status without pay was reversed and Plaintiff was paid from November 4 through December 4, 2000; that on November 28 and December 11, 2000, the Postal Service sent Plaintiff notices of appointments for Fitness For Duty ("FFD") examinations, which appointments Plaintiff did not keep; that the Postal Service reissued these notices which were defective; that Plaintiff did not appear for these appointments; and that based on Plaintiff's failure to report for an FFD examination, the Postal Service issued a Notice of Proposed Removal. Id. at 3.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

the arbitrator issued a decision suspending Plaintiff's removal. Because the Postal Service took the position the arbitrator's decision was in violation of the Agreement the NALC filed another grievance on January 23, 2003, to compel the Postal Service to comply with the arbitrator's decision.

5. The Postal Service filed a Complaint for Declaratory and Injunctive Relief in the United States District Court for the District of Columbia on February 3, 2003, Case 1:03CV176, which Complaint sought to enforce the arbitrator's decision. On September 26, 2004, the district court issued a Memorandum Opinion granting summary judgment in favor of the NALC in Case 1:03CV176. Subsequently, the Postal Service and the NALC began jointly working to implement the arbitrator's decision by satisfying the conditions precedent set out in the decision.[3] In March 2005, the NALC and the Postal Service entered into a Settlement Agreement regarding the two grievances described above. The Settlement Agreement states, in relevant part, that pursuant to the Arbitrator's decision of October 30, 2002, Plaintiff would be paid for the period from December 4, 2000, through November 30, 2002; that Plaintiff's "back pay for salary, uniform allowance, leave payment and overtime, [would] be paid as a lump sum of $127,881.32"; and Plaintiff's "sick leave balance [would] be credited 208 hours and his Annual Leave balance [would] be credited 208 hours." The Settlement Agreement further provides the date upon which Plaintiff was to report for duty and also addresses bidding procedures which would be applicable to him. Def. Ex. L. After Plaintiff passed a fitness exam, by letter dated March 22, 2005, the Postal Service informed Plaintiff that he should return to work on March 26, 2005, at the McKenzie Pointe Branch, in St. Louis, Missouri. Plaintiff returned to work on that date.

---

[3] The arbitrator concluded that the Postal Service did not have just cause to terminate Plaintiff and ordered the Postal Service to determine what, if any, accommodations would be best to assist Plaintiff to safely return to work and ordered that Plaintiff present himself within 180 days for a FFD examination. Def. Ex. F at 17.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

6. By letter dated January 21, 2005, Plaintiff's attorney, David Swimmer, contacted the Postal Service and requested that the arbitrator's decision be enforced. In a letter dated January 31, 2005, addressed to Mr. Swimmer, Don Horan, Manager, Labor Relations for the Postal Service, stated that the NALC is the exclusive bargaining representative for all employees in the bargaining unit and that, absent a release from the NALC for Mr. Swimmer to represent Plaintiff, Mr. Swimmer's request for information was being denied.

7. Plaintiff filed a Complaint for Declaratory Judgment in the instant matter on February 24, 2005. Doc. 1. Plaintiff filed an Amended Complaint for Declaratory Judgment on April 5, 2005. Doc. 7. In Plaintiff's Amended Complaint, Count I, in respect to the Postal Service, he states that he has a constitutional right to be represented by an attorney in regard to his claim against the Postal Service; that he wants to enforce his rights pursuant to the collective bargaining agreement between the Postal Service and the NALC; and that he wants to be represented by an attorney of his choice. Also, in Count I Plaintiff asks this court to issue a declaratory judgment which includes a statement of Plaintiff's rights and to enforce the decision of the district court in Case No. 1:03CV176 and the decision of the arbitrator, and further asks this court to award Plaintiff costs and attorney's fees. In Count II, in respect to the NALC, Plaintiff repeats the allegations and requests for relief which he makes in Count I.

8. The Postal Service contends that Plaintiff's Amended Complaint should be dismissed pursuant to Fed. R. Civ. P 12(b)(1) and (b)(6) because this court does not have subject matter jurisdiction; because the Amended Complaint fails to state a claim upon which relief can be granted; because Plaintiff lacks standing; and because the present action is moot. Alternatively, the Postal Service contends that summary judgment should be granted in its favor as there are no material facts at issue and because based on the undisputed facts it is entitled to judgment as a matter of law. Doc. 9. The

4

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

NALC contends in its Motion to Dismiss that Plaintiff has failed to state a cause of action pursuant to Rule 12(b)(6) as he does not have standing to intervene in the resolution of the grievances filed by the NALC and as the settlement agreement renders Plaintiff's claim moot. Doc. 21.

**LEGAL STANDARD FOR A MOTION TO DISMISS**

A court may dismiss a cause of action for failure to state a claim if it appears beyond a doubt that the plaintiff can prove no set of facts in support of its claim that would entitle it to relief. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Alexander v. Peffer, 993 F.2d 1348, 1349 (8th Cir. 1993). "The issue is not whether plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support [its]claim." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). See also Bennett v. Berg, 685 F.2d 1053, 1058 (8th Cir. 1982) (a complaint should not be dismissed merely because the court doubts that a plaintiff will be able to prove all of the necessary factual allegations). The court must review the complaint most favorably to the plaintiff and take all well-pleaded allegations as true to determine whether the plaintiff is entitled to relief. See Conley, 355 U.S. at 45-46. A dismissal under Rule 12(b)(6) should be granted only in the unusual case in which a plaintiff has presented allegations that show on the face of the complaint that there is some insuperable bar to relief. See Coleman v. Watt, 40 F.3d 255, 258 (8th Cir. 1994).

**STANDARD FOR SUMMARY JUDGMENT**

A court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. See Anderson v. Liberty

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id. See also Fenny v. Dakota, Minn. & E.R.R. Co., 327 F.3d 707, 711 (8th Cir. 2003) (holding that an issue is genuine "if the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party").

A moving party always bears the burden of informing the court of the basis of its motion. See Celotex, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of his pleading. Anderson, 477 U.S. at 256.

In passing on a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party and all justifiable inferences are to be drawn in its favor. Id. at 255; Raschick v. Prudent Supply, Inc., 830 F.2d 1497, 1499 (8th Cir. 1987). The court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. However, "[t]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). With these principles in mind, the court turns to an analysis of Defendant's motion.

**DISCUSSION**

1. As stated above a complaint may be dismissed pursuant to Rule 12(b)(6) where a plaintiff has failed to state a claim upon which relief can be granted. In his Amended Complaint Plaintiff asks this court to declare that he has a right to intervene in the grievance-arbitration matters filed by the NALC which addresses Plaintiff's removal from the Postal Service. The law is well established an employee does not have standing to intervene in the grievance-arbitration process established by the collective

6

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

bargaining agreement between the employer and the union. See Trompeter v. Boise Cascade Corp., 877 F.2d 686, 687 (8th Cir. 1989) ("It is well settled that ordinarily, it is the union's task to seek judicial enforcement of the collectively bargained terms on the employee's behalf.") (citing Republic Steel Corp. v. Maddox, 379 U.S. 650, 652-53(1965)).

2. It is also well established that a union which is the exclusive bargaining representative of employees in a bargaining unit has a statutory duty to fairly represent all of the employees in the bargaining unit. See Vaca v. Sipes, 366 U.S. 171, 177 (1967). "[T]he exclusive agent's statutory authority to represent all members of a designated unit includes a statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." Id. In Vaca, the Supreme Court further explained the duty of fair representation as follows:

> "Section 8(b)(1)(A) of the [National Labor Relations Act] accordingly prohibits labor organizations, when acting in a statutory representative capacity, from taking action against any employee upon considerations or classifications which are irrelevant, invidious, or unfair." 140 N.L.R.B., at 185. The Board also held that an employer who "participates" in such arbitrary union conduct violates s 8(a)(1), and that the employer and the union may violate ss 8(a)(3) and 8(b)(2), respectively, "when, for arbitrary or irrelevant reasons or upon the basis of an unfair classification, the union attempts to cause or does cause an employer to derogate the employment status of an employee." Id. at 186.

Id. at 177-78.

The duty of fair representation does not require that a collective bargaining representative take every grievance to arbitration, although it cannot "arbitrarily ignore a meritorious grievance or process it in a perfunctory fashion." Id. at 191. Moreover, "a union does not breach its duty of fair representation, and thereby open up a suit by the employee for breach of contract, merely because it settled [a] grievance short of arbitration." Id. at 192.

7

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

An employee is not limited to the remedial procedures provided by the contract between his or her employer and the union when "the conduct of the employer amounts to a repudiation of those contractual procedures" or when "the union has sole power under the contract to invoke the higher stages of the grievance procedure, and *if ... the employee-plaintiff has been prevented from exhausting his contractual remedies by the union's wrongful refusal to process the grievance*." Id. at 185 (emphasis added). The remedies which the employee has under such circumstances is to bring a lawsuit pursuant to § 301 or § 303 of the Labor Management Relations Act, 29 U.S.C. § § 185, 187, or to file a charge against the union and/or the employer with the NLRB.[4]

3. The Eighth Circuit has directly addressed the issue of whether a union violates its duty of fair representation when it excludes an employee's private attorney from grievance-arbitration proceedings in Baxter v. United Paperworkers International Union, 140 F.3d 745, 747-48 (8th Cir. 1998), where the court held as follows:

> [Because] there was no evidence of a specific need for [the lawyer's] presence--we conclude that such exclusion did not constitute a breach of UPI's duty of fair representation. See Garcia v. Zenith Elec. Corp., 58 F.3d 1171, 1179-80 (7th Cir.1995) (noting that in "unique context of labor relations," union's decision "to disallow the presence of an independently-retained attorney in a particular case is not, standing alone, enough to show that the union acted arbitrarily"); Castelli v. Douglas Aircraft Co., 752 F.2d 1480, 1483-84 (9th Cir.1985) ("no court has adopted the rule that employees are entitled to independently retained counsel in arbitration proceedings or that the exclusion of such attorneys from arbitration violates the duty of fair representation"; participation of employee's counsel could "bypass the union and undermine the policy of exclusive representation").

4. In the matter under consideration Plaintiff does not allege that the NALC, as the exclusive bargaining representative of the Postal Service's employees, breached its duty of fair representation

---

[4] The Supreme Court held in Vaca, 386 U.S. at 183, that in the event a collective bargaining agreement limited discharges to those for good cause but contained no grievance, arbitration or other provisions purporting to restrict access to the courts, an employee discharged without cause may sue the employer under § 301 of the Labor Management Reporting Act.

8

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

nor has Plaintiff articulated a "specific need" for his attorney to participate in the grievance-arbitration procedure.[5] Indeed, the NALC has filed two grievances on Plaintiff's behalf; it has filed a suit in federal court to enforce the arbitration award which was favorable to Plaintiff; and it has executed a settlement agreement with the Postal Service which provides for Plaintiff's return to work with benefits restored including back pay. Moreover, Plaintiff *has* returned to work and the grievances at issue have been settled. The court finds, therefore, that Plaintiff does not state a cause of action upon which relief can be granted and that his Amended Complaint should be dismissed pursuant to Rule 12(b)(6). See Vaca, 386 U.S. at 177-92; Baxter, 140 F.3d at 747-48. As such, the court need not address other arguments made by the Postal Service in support of its Motion to Dismiss or, in the alternative, Motion for Summary Judgment. Additionally, the court need not address additional issues raised in the NALC's Motion to Dismiss.

## CONCLUSION

The court finds for the reasons more fully set forth above that Plaintiff's Amended Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

Accordingly,

**IT IS HEREBY ORDERED** that the Motion to Dismiss filed by Defendant John E. Potter is **GRANTED**; [Doc. 9]

**IT IS FURTHER ORDERED** that the Motion to Dismiss filed by the NALC is **GRANTED**; [Doc. 20]

---

[5] Although Plaintiff states in his Response to the NALC's Motion to Dismiss that he merely wants to enforce the judgment of the arbitrator, his Amended Complaint is not so limited. As noted above, enforcement of the judgment must be through § 301 or § 303 of 29 U.S.C. §§ 185, 187 or by filing a charge against the union and/or the employer with the NLRB.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

**IT IS FURTHER ORDERED** that the Amended Complaint filed by Plaintiff is **DISMISSED**; [Doc. 7]

**IT IS FURTHER ORDERED** that a Judgment shall issue this same date incorporating this Memorandum Opinion.

/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE

Dated this  6th  day of June, 2005.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com